**Opinion issued February 21, 2013**



In The

# Court of Appeals

For The

# First District of Texas

—————————————————

## NO. 01-12-00241-CR

—————————————————

## RAY MYERS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court at Law No. 4
Harris County, Texas
Trial Court Case No. 1784225

## MEMORANDUM OPINION

A jury found appellant, Ray Myers, guilty of the offense of assault of a

family member,[1] and the trial court assessed his punishment at confinement for

---

[1]    *See* TEX. PENAL CODE ANN. § 22.01(b)(2) (Vernon 2011).

365 days.  In one issue, appellant contends that the evidence is legally insufficient to support his conviction.  We affirm.

## Background

Houston Police Department ("HPD") Officer M. Combs testified that at 4:30 p.m. on August 2, 2011, he and his partner, Officer Tsibanos, were dispatched to an apartment complex to investigate a delayed assault report.  Upon their arrival, Combs took a statement from the complainant, appellant's wife, in the parking lot and observed her injuries.  Combs noted that the complainant had dried blood in her left ear and was missing a tooth in her lower left jaw area.

HPD Officer J. Coffelt, assigned to the HPD Family Violence Unit, testified that she met with the complainant on September 28, 2011 and individuals often delay reporting an assault or will not follow up on reported assaults.  She noted that the injuries the complainant sustained were common for assault victims and consistent with what she had seen in other assault cases, but she had no personal knowledge of how the complainant was injured.  Coffelt, who was assigned to the case right after it was reported, noted that when she checked the criminal history of appellant, she found that he was already in custody because of the complainant's allegations.  Coffelt explained that the complainant had first reported the incident to appellant's parole officer, which is not unusual.  She noted that although the affidavit prepared by appellant's parole officer was generally consistent with the

2

police report and the complainant's statement, there was one inconsistency. She noted that it was not unusual for there to be such a minor inconsistency because a police report contains the officer's version of what a complainant says and the officer might leave out details that he does not consider important.

The complainant testified that she had dated appellant on and off since 2000, they were married in 2010, and, in August 2011, she and appellant were living together. On August 1, 2011, the complainant went to an appointment at a food stamp office, but she returned home early when the appointment was reset. When she returned home, she saw appellant "acting" like he was working on his car, and, when she walked toward the house, she saw a woman leaving from the back of the house. When the complainant confronted appellant about the woman leaving the house, he got angry and "big faced" her, which meant that he used his hand on her face to push her down to the floor. Appellant then began "swinging" and hitting her with his closed fist, holding her with his other hand. The complainant explained that it felt "horribly" and "hurtful," and she had blood in her ear and mouth. The assault lasted "all night" as he was throwing her around the house. When the complainant would get away, appellant would then assault her again, using his right hand to hold her while hitting her with his left hand. When she used a stick, and later a knife, to defend herself, appellant took these away and retrieved a rifle from the attic. After appellant obtained the rifle, the complainant went to

3

her bedroom and stayed there the rest of the night while appellant sat in a recliner in the living room until morning.

The complainant further testified that the next day, her sister picked her up and took her back to the food stamp office. She was in "disarray" from the altercation, and she wore sunglasses to hide her face. When asked by a caseworker as to what had happened, the complainant replied that she "got into a physical contact with [her] husband." She explained that when she left the food stamp office, she went to her mother's apartment because she "couldn't go home" as she was afraid that if she went home the same thing would happen again. Thus, she contacted appellant's parole officer who told her that she needed a case report number from the police. She met the police officers in the parking lot, where she spoke with them and showed them her injuries, including the blood in her ear, a missing tooth, and bruises on her body, which were all caused by appellant.

The complainant explained that she went to the food stamp office before calling to report the assault because it was a "have-to-be-done" so that her son would have food to eat and she reported the assault as soon as she could. The next day the complainant met with appellant's parole officer and told him that appellant had hit her several times. Although the affidavit that she signed for the parole officer stated that appellant hit her once, the complainant explained that it was possible that the parole officer, who wrote and typed the affidavit, neglected to

4

include the fact that he hit her several times. And although she signed the affidavit, the complainant did not read it because she was tired and ready to go. The complainant noted that, at the time, she had bruises on both of her arms and both of her legs and she had been scratched during the attack.

Appellant testified that he had several felony convictions and was, at the time, on parole for possession of a controlled substance. He noted that the complainant was not living with him in August 2011, but was living "around the corner" with another man. Appellant denied hitting the complainant and explained that his right hand was paralyzed from a gunshot wound that he received when he was 16 years old. He explained that although he can move his right arm, he cannot move his fingers and cannot make a fist with his right hand; thus, he uses his left hand only. Appellant explained that he did not see the complainant on August 1, 2011 and had not seen her since June 2011. And he denied hitting her face, punching her on the arm, or getting a gun and terrorizing the complainant.

## Sufficiency of the Evidence

In one issue, appellant argues that the evidence is legally insufficient to support his conviction because "it was not credible," "contained inconsistencies," and "was so contradictory that no rational jury could have found beyond a reasonable doubt that [appellant] assaulted [the complainant]."

5

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89 (1979)). Evidence is legally insufficient when the "only proper verdict" is acquittal. *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 2218 (1982). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). In doing so, we give deference to the responsibility of the fact-finder to fairly resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from the facts. *Id*. We defer to the fact finder's resolution of conflicting evidence unless the resolution is not rational. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Williams*, 235 S.W.3d at 750.

A person commits the offense of assault if he intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse. *See* TEX. PENAL CODE ANN. § 22.01 (Vernon 2011). Although usually a Class A

6

misdemeanor, the offense is elevated to a third-degree felony if it is committed against a person whose relationship with the defendant is described in sections 71.0021(b) (dating), 71.003 (family), or 71.005 (household) of the Texas Family Code and the defendant has been previously convicted of an assault involving family violence. *Id*. § 22.01(b)(2)(A); *see* TEX. FAM. CODE ANN. § 71.0021(b) (Vernon Supp. 2012); *Id*. §§ 71.003, 71.005 (Vernon 2008).

Appellant asserts that the "inconsistencies and outright contradictions within [the complainant's] testimony and between her testimony and the offense report and affidavit to the parole officers, taken together conclusively establish reasonable doubt." Appellant also asserts that the complainant made inconsistent statements in her trial testimony and in her affidavit, which was prepared by his parole officer. He notes that the complainant testified that he hit her several times, but this information is not in her affidavit. However, the complainant denied that she had told appellant's parole officer that he had hit her only once. She testified that she told the parole officer "exactly what happened," that she "was assaulted. Period." The complainant also testified that it was appellant's parole officer who prepared the affidavit and although she looked at it, she did not read it before she signed it. She also noted that the parole officer did not offer to let her make any changes and she had given the parole officer a brief written statement that was a summary of what had happened without all the details.

7

Appellant also asserts that Officer Coffelt testified that there was at least one statement in the complainant's affidavit that was inconsistent with the police report. However, Coffelt testified that such a minor inconsistency is not unusual because complainants often give more details on some occasions than others and law enforcement officers, in their reports, write their version of what they were told and often leave out details that they do not consider important.

Jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given the witness's testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981); *Jaggers v. State*, 125 S.W.3d 661, 672 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). As such, they may choose to believe or disbelieve any part of a witness's testimony. *See Davis v. State*, 177 S.W.3d 355, 358 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Likewise, "reconciliation of conflicts in the evidence is within the exclusive province of the jury." *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000) (quoting *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986)). A jury may choose to believe certain testimony and disbelieve other testimony. *Id*. If there is enough credible testimony to support a defendant's conviction, the conviction will stand. *Id*.

The complainant testified that appellant put his hand on her face, pushed her down, and, while holding her down with his right hand, hit her several times with

8

his left hand. She also noted that appellant threatened her with a gun. Officer Combs testified that he observed dried blood in the complainant's ear and she was missing a tooth when he took a statement from her. And the complainant's statements to Combs were consistent with her testimony that appellant assaulted her.

The complainant acknowledged that she gave a "summary" to the parole officer and did not read the affidavit to confirm its accuracy before she signed it. Officer Coffelt testified that such inconsistencies between statements are not uncommon and complainants provide more details at different times in investigations. As fact-finder, the jury was entitled to resolve conflicts in the testimony in favor of the complainant, and we defer to that resolution. *Williams*, 235 S.W.3d at 750.

Viewing the evidence in the light most favorable to the jury's finding, we hold that it is sufficient to support appellant's conviction for assault of a family member.

We overrule appellant's sole issue.

### Conclusion

We affirm the judgment of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Do not publish. TEX. R. CIV. P. 47.2(b).